**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00606-CHL**

SHAWN F.,[1]                                                                                   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                      Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Shawn F. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief, and Claimant filed a reply. (DNs 15, 17, 18.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

**I.     BACKGROUND**

Claimant had previously been found disabled in a July 13, 2011, decision. (R. at 97.) On June 29, 2018, Administrative Law Judge ("ALJ") Jerry Lovitt ("ALJ Lovitt") issued an unfavorable decision finding that Claimant's disability ended on March 11, 2015, and that

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

Claimant had not become disabled again since that date. (*Id.* at 94-110.) In doing so, ALJ Lovitt found that Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

> [H]e may occasionally stoop, kneel, crouch, and climb ramps or stairs, but cannot crawl or climb ladders, ropes, or scaffolds. He can tolerate no more than occasional exposure to vibrations and workplace hazards such as machinery with moving parts that fails to stop when human contact is lost, but cannot be exposed to any unprotected heights. He may occasionally reach overhead with the bilateral upper extremities. He is expected to be off task no more than 10% of the workday in addition to normally scheduled breaks, and he would miss no more than 1 day of work per month.

(*Id.* at 99-100.) The record does not show that Claimant appealed ALJ Lovitt's unfavorable decision. (DN 15, at PageID # 863.)

Instead, on July 27, 2020, Claimant applied for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 48, 112, 128, 130, 146-47, 154-55, 162, 296-306.) His applications alleged disability beginning on June 30, 2018, due to his lower lumbar L5-S1 spinal injury and vasovagal syncope. (*Id.* at 112, 130, 147, 155.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 170-73, 187-90, 198-203.)

At Claimant's request, ALJ Candace A. McDaniel ("ALJ McDaniel") conducted a hearing on Claimant's applications on September 1, 2022. (*Id.* at 64-93, 204-05.) Claimant attended the hearing in person with his attorney. (*Id.* at 66.) An impartial vocational expert also participated in the hearing. (*Id.*)

During the hearing, Claimant testified to the following. He currently lives with his father and does drive some. (*Id.* at 69-70.) His current pain management doctor was trying to get him scheduled for epidurals for his back but was waiting on word from Claimant's "neuro people," who he was going to see the day after the hearing. (*Id.* at 75.) His pain management doctor was

also looking into getting him a spinal stimulator pending insurance approval. (*Id.* at 77-78.) He takes multiple medications for pain, uses patches and creams, and uses both a back brace and a knee brace; these measures help with his pain but do not get rid of it. (*Id.* at 76-77.) He has worn the back brace continuously except when sleeping or showering for fifteen years since his original back injury and surgery. (*Id.* at 76.) The medications he takes cause him to feel fatigued, tired, and worn out, and he spends at least half of his day lying down. (*Id.* at 77.) He had an MRI of his head done and was told he had two dozen vascular brain tumors everywhere that he believes are causing "the vasovagal, the headaches, [and] the seizure-like activity" he has been experiencing. (*Id.* at 78.) He has headaches all the time, and sometimes they are so bad that he passes out. (*Id.* at 78-79.) He has also been experiencing tremors and muscle spasms all throughout his legs, arms, lower lumbar and beyond that his physicians have marked as seizure-like activity. (*Id.* at 79.) He can walk a block before his sciatic pain gets very bad, can only stand for fifteen minutes at the most before he feels the need to sit down, and cannot sit in a chair very long without pain. (*Id.* at 79-80.) He can cook for himself and shop for groceries but does require assistance with shopping depending on how many groceries he gets. (*Id.* at 80.) He is doing physical therapy for his back and knee. (*Id.* at 82.) In response to questioning from the ALJ about his vasovagal syncope and passing out after headaches, he could not identify any such episodes 2018 going forward after which he got treatment. (*Id.* at 83-84.)

ALJ McDaniel issued an unfavorable decision on October 31, 2022. (*Id.* at 45-63.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, ALJ McDaniel made the following findings. First, the Claimant had not engaged in substantial gainful activity since June 30, 2018, his alleged onset date. (*Id.* at 51.) Second, Claimant had the following severe impairments: lumbar

3

degenerative disc disease and chondromalacia of the right patella and internal derangement of the right knee. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 52.) Fourth, Claimant had the RFC to perform light work with the following exceptions:

> The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. The claimant is able to sit for six hours in an eight-hour workday and he is able to stand and walk for six hours in an eight-hour workday. The claimant should not climb ladders, ropes or scaffolding. The claimant is able to climb ramps and stairs frequently. The claimant is able to kneel[,] stoop, crouch and crawl occasionally. The claimant should be afforded the ability to alternate positions at a 30 or 60 minute interval[] taking one to two minutes to change position without leaving the workplace while staying on task. The claimant should have no concentrated exposure to vibration. The claimant should have no exposure to work hazards, meaning unprotected heights and the operation of dangerous moving machinery.

(*Id.* at 53.) Additionally at step four, ALJ McDaniel found that Claimant was unable to perform any of his past relevant work as a fast food manager and short order cook. (*Id.* at 56.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 57.) ALJ McDaniel concluded that Claimant was not under a disability from June 30, 2018, through the date of her decision. (*Id.* at 58.)

Claimant subsequently requested an appeal to the Appeals Council and submitted additional medical evidence in support of his request. (*Id.* at 13-44, 294-95.) On October 5, 2023, the Appeals Council denied Claimant's request for review; in doing so it both found no reason to review ALJ McDaniel's decision and found that Claimant's additional evidence did "not show a reasonable probability that it would change the outcome of the decision." (*Id.* at 2, 1-5.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the

4

Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on November 20, 2023. (DN 1.).

## II. DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2024).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other

way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2024). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2024).

Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.   Claimant's Contentions

Claimant made three arguments in his brief. First, he argued that ALJ McDaniel erred by not adopting the prior RFC determination of ALJ Lovitt in violation of the principles of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). (DN 15, at PageID # 866-70; DN 18, at PageID # 905-12.) Second, Claimant argued that the ALJ failed to evaluate the opinion of Abby Janszen, PT, in accordance with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c (2024). (DN 15, at PageID # 870-74; DN 18, at PageID # 912-14.) Finally, Claimant argued that the records he provided to the Appeals Council justified a sentence six remand. (DN 15, at PageID # 875-76; DN 18, at PageID # 914-16.) Because the Court concludes that remand is warranted on the first argument, the Court does not reach the other two.

Claimant argued that ALJ McDaniel erred by not adopting ALJ Lovitt's RFC finding pursuant to *Drummond* and AR 98-4(6). (DN 15, at PageID # 866-70; DN 18, at PageID # 905-12.) In particular, he argued that ALJ McDaniel erred in finding him less restricted than ALJ Lovitt, who had limited him to sedentary work. He asserted that his condition had actually worsened since the time of ALJ Lovitt's decision such that he was not capable of performing light work as found by ALJ McDaniel and that in so finding, she violated both *Drummond* and AR 98-4(6). The Court disagrees that ALJ McDaniel violated *Drummond* and its progeny but nonetheless finds that substantial evidence does not support ALJ McDaniel's decision.

In *Drummond*, the claimant was assessed an RFC to perform sedentary work by one ALJ and an RFC to perform light work by a subsequent ALJ. *Drummond*, 126 F.3d at 838-39. The Sixth Circuit held that principles of *res judicata* are binding on both claimants and the Commissioner and that where "the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Thus, because the single piece of medical evidence for the period between the two RFC determinations did not support any improvement in Drummond's condition, it was error for the second ALJ not to adopt the prior RFC finding under which Drummond would have been disabled given his age. *Id.* at 843. In recognition of this ruling, the SSA issued AR 98-4(6) directing those within the Sixth Circuit to follow *Drummond*'s holding. SSAR 98-4(6), 63 Fed. Reg. 29771 (June 1, 1998). AR 98-4(6) explains,

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . .

*Id.* at 29773.[3]

But in *Earley v. Commissioner of Social Security*, 893 F.3d 929, 933-34 (6th Cir. 2018), the Sixth Circuit clarified *Drummond*'s holding. In *Earley*, the claimant had been limited by the first ALJ to an RFC of light work, but the second ALJ found that under *Drummond* he was bound by the prior finding unless Earley offered "new and material evidence of a changed condition," which he found she had not done. *Id.* at 931. The Sixth Circuit distinguished *Drummond* and clarified that when considering a subsequent disability claim for a new period of

---

[3] While AR 98-4(6) was recently rescinded by the SSA, it was in effect at the time ALJ McDaniel issued her written decision on Claimant's applications. SSAR 24-1(6), 89 Fed. Reg. 92992 (Nov. 25, 2024) (noting that the recission would be effective as of Dec. 2, 2024).

disability, an ALJ is permitted to review prior ALJ findings but is not bound by them. *Id.* at 933-34. Specifically, the Sixth Circuit held that in considering a successive application that covers a new period of disability, a subsequent ALJ should take a "fresh look" at the new record to determine if a claimant's condition has worsened or new evidence changes previous analysis. *Id.* at 931. However, the Sixth Circuit cautioned that a successive applicant who offers "no new evidence or very little new evidence after a failed application . . . should not have high expectations about success." *Id.* at 933. It noted, "What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals." *Id.* at 933-34. It also cautioned that "[f]resh review is not blind review. A later [ALJ] may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Claimant's argument imputes a higher standard than supported by case law to ALJ McDaniel's consideration of ALJ Lovitt's opinion. *Earley* makes clear that because Claimant's instant applications were for a new period of disability, ALJ McDaniel *was not bound* to adopt ALJ Lovitt's RFC determination. *Id.* at 933 (noting that an ALJ honors principles of "[f]inality, efficiency, and the consistent treatment of like cases" when he or she considers a prior ALJ's decision, explaining, "That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application." (emphasis added)). And neither the cases cited by Claimant, nor *Drummond*/*Earley* require any specific discussion by ALJ McDaniel of ALJ Lovitt's RFC and decision in order to comport with the applicable standard under *Earley*. Thus, these authorities counsel in favor of finding that ALJ McDaniel did not err in her application of *Drummond*/*Earley*. The instant applications before ALJ

McDaniel were for a new period of time as compared to the time period at issue in ALJ Lovitt's decision. (*Compare* R. at 97-105 (finding in June 29, 2018, decision that Claimant's disability ended on March 11, 2015, and that he had not become disabled again since that date), *with id.* at 48-58 (finding in October 31, 2022, decision that Clamant was not disabled from June 30, 2018, through the date of the decision).) Thus, under governing law as set forth in *Earley*, all ALJ McDaniel was required to do was give Claimant's instant applications a "fresh look." Even a basic review of her decision supports that she did indeed give Claimant's applications that fresh look. Thus, the Court finds no error in ALJ McDaniel's compliance with the legal principles of *Drummond/Earley*.

This finding notwithstanding, the Court still concludes that ALJ McDaniel's decision is not supported by substantial evidence. Courts have held repeatedly that a reviewing court's role in determining whether an ALJ's decision is based upon substantial evidence is not to "resolve conflicts in evidence or decide questions of credibility." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Nor is this Court's role to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714. However, this court considers the record as a whole and may look to any evidence in the record—regardless of whether it has been cited by the ALJ—in determining whether an ALJ's decision is supported by substantial evidence. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citing *Walker v. Sec'y of Health & Hum. Servs.,* 884 F.2d 241, 245 (6th Cir. 1989), *questioned on other grounds by Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994)). The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence

standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). But it does require the ALJ to make accurate citations to the record and not ignore without comment large bodies of conflicting evidence. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit selective reading of the record.").

Here, the Court's review of the record begins with ALJ Lovitt's prior decision. Surveying medical records dated between July 30, 2014, and February 28, 2018, ALJ Lovitt found Claimant to have only one severe impairment: degenerative disc disease of the lumbar spine. (R. at 99, 109-10.) In his summary of the pertinent portions of the medical record, ALJ Lovitt noted that a February 2016 MRI of Claimant's spine showed "an ongoing disc extrusion at L5-S1 with effacement of the thecal sac and abutement of the L5 and S1 nerve roots." (*Id.* at 101.) ALJ Lovitt found that these MRI results supported limiting Claimant to sedentary work though he went on in his opinion to rely upon a number of factors in support of his RFC determination. (*Id.*) In particular, ALJ Lovitt noted that Claimant lacked a history of consistent treatment for his impairments, was no longer using narcotic pain medications, had turned down additional surgery several times, had "largely normal neurologic findings," and had a "normal physical and orthopedic examination" during the consultative examination conducted of Claimant. (*Id.* at 101-02.) ALJ Lovitt summarized, "Since the examiner's report, ongoing treating records have described normal muscle tone and strength, a normal and smooth gait without assistive device, normal and equal reflexes, and normal strength in legs outside mild

11

reduction in the right knee graded at 4/5." (*Id.* at 102.) Thus, ALJ Lovitt limited Claimant to a reduced range of sedentary work. (*Id.* at 99-100.)

ALJ McDaniel offered no explicit discussion of ALJ Lovitt's findings in her determination of Claimant's RFC though her decision made clear she was aware of the prior findings. (*Id.* at 56 ("The undersigned is cognizant of the provisions of AR 98-4(6) ('Drummond'), but finds that the finding made herein is not barred based on the new evidence of record.").) Instead, surveying medical records dated between January 31, 2018, and October 4, 2022, ALJ McDaniel concluded that Claimant now had two severe impairments: the same lumbar degenerative disc disease assessed by ALJ Lovitt and chondromalacia of right patella and internal derangement of the right knee. (*Id.* at 51, 62-63.) But unlike ALJ Lovitt and notwithstanding the new severe impairment, ALJ McDaniel found that Claimant could perform a reduced range of light work. (*Id.* at 53.) In doing so, ALJ McDaniel did cite to nearly all of the medical visits of record dated after Claimant's alleged onset date. (*Id.* at 53-56.) She emphasized that Claimant "had little treatment from the alleged onset date in 2018 until more recently in 2022." (*Id.* at 54.) She observed that he "remained independently ambulatory with minimal treatment over the last four years with no updated restrictions." (*Id.*) Regarding Claimant's back, she recounted the same findings from the 2016 imaging then emphasized that he had received little treatment until 2020. (*Id.* at 54-55.) She noted that "[l]umbar imaging from July of 2022 showed moderate to severe bilateral neuroforaminal narrowing," but emphasized that his gait and stance were normal and stable in August 2022. (*Id.* at 55.) She summarized that she "d[id] not find additional limitations warranted, as his treatment has been infrequent during the relevant period and exam findings limited." (*Id.*) Regarding Claimant's knee impairment, she noted that Claimant first sought treatment in 2018 and then there were no

other records regarding Claimant's knees until the consultative examination in 2020. (*Id.*)  She noted that during the consultative examination, Claimant had limited strength in his right leg and limited range of motion in his knees.  (*Id.*)  But then she noted that during a July 2022 visit, Claimant "exhibited good strength on flexion and extension with no gross instability." (*Id.*)  She recounted that while he did complete some physical therapy, "[h]e was limited in therapy due to nerve pain in his right lower extremity" and "[h]is gait was antalgic toward the end of [August 2022]."  (*Id.*)  As with Claimant's back, she found that "[a]dditional limitations [we]re not warranted, as the [C]laimant's treatment has been infrequent and exam [ ]  findings [limited]." (*Id.* at 56.)  She then relied upon the opinions of the state agency medical consultants, who restricted Claimant to a range of light work, in formulating her determination of his RFC though she assessed greater limitations than those consultants "to better account for additional treatment evidence received as well as hearing testimony." (*Id.*)

If ALJ Lovitt's prior decision was not before the Court, the Court would have no trouble finding that ALJ McDaniel's decision was supported by substantial evidence.  But the fact remains that ALJ McDaniel focused on many of the same things about the treatment records that ALJ Lovitt had focused on and came to a different conclusion about Claimant's RFC *without any explanation*.  They both relied on imaging findings of degenerative disc disease and a relative lack of treatment characterized by large gaps between visits that contained numerous normal findings.  Yet ALJ Lovitt found sedentary work was appropriate and ALJ McDaniel found light work was appropriate without any apparent explanation as to any change in Claimant's circumstances.  She made no finding that his condition had improved and unlike many of the other similar fact patterns in unpublished Sixth Circuit decisions post-*Earley*, the Court cannot conclude that the medical evidence supports one.

For example, in *Amburgey v. Commissioner of Social Security*, the Sixth Circuit considered a case where the first ALJ had limited claimant to sedentary work and the second ALJ had limited her to light work. *Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 858-59 (6th Cir. 2018). In addressing claimant's argument that the second ALJ improperly changed the first ALJ's RFC determination in violation of *Drummond*, the Sixth Circuit wrote, "Contrary to Plaintiff's contention, *Drummond* does not apply here." *Id.* at 861. It explained,

> Whereas the ALJs in *Drummond* reached different conclusions about the plaintiff's RFC based on nearly identical evidence, in this case the ALJ's second decision relied on an extensive body of evidence collected after the decision denying Plaintiff's first application. Furthermore, unlike in *Drummond*, the evidence collected after the first decision indicated that Plaintiff's circumstances had improved.

*Id.* at 861-62. In a footnote, the Sixth Circuit specifically noted that while the ALJ's decision "would have benefitted from an explicit discussion . . . about how Plaintiff's medical circumstances had changed," the lack of that discussion did not "invalidate[ ] the ALJ's decision because substantial medical evidence collected after the ALJ's first decision indicated that Plaintiff's medical circumstances had improved." *Id.* at 862 n.14 (citing *Drummond*, 126 F.3d at 843). This case is not like *Amburgey* because the Court cannot say the same thing about the medical record. To the contrary, the Court agrees with Claimant that the record supports a conclusion that his condition had worsened given that ALJ McDaniel assessed an additional severe impairment and many of the normal findings in the record were beginning to be listed as abnormal, such as Claimant's gait. While ALJ McDaniel summarized the records cited by Claimant in her decision, she offered no explanation for why this evidence supported a higher RFC than prescribed by ALJ Lovitt. The closest she came was citing to "the new evidence of record." (R. at 56.) But given the overlap and relationship between the evidence in ALJ Lovitt's decision and the "new" evidence in ALJ McDaniel's decision, that is not much of an

14

explanation.  In the absence of a cogent explanation, the Court simply cannot conclude that her decision is supported by substantial evidence.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **REVERSED** and that this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings.  A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of Record

February 21, 2025

15